UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

INTREPID GLOBAL IMAGING 3D, INC.,

    Plaintiff,
v.                                             Case No. 3:07-cv-1106-J-33HTS

PIA ATHAYDE, PAUL BAINS, BAYSIDE
MANAGEMENT CORP., GURCHARAN BERAR,
JINDER BERAR, KARMJIT BERAR, KENT
CARASQUERO, NIRWAL GREWAL, HARP
HOONJAN, ANDY LEWIS, LESLIE
LOUNSBURY, MARTIN TUTSCHEK, and
TYEE CAPITAL CONSULTANTS,

    Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants' motion to dismiss Plaintiff's Verified Complaint (Doc. # 23), filed on December 12, 2007. After thoroughly reviewing the Verified Complaint under the rigorous standards of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, et seq. ("PSLRA"), this Court determines that the Verified Complaint should be dismissed without prejudice and that the TRO should be dissolved.[1]

---

[1] This Order dismissing the Verified Complaint was decided without the benefit of a reply from Plaintiff because this Court is obligated to dismiss defective securities fraud suits at the earliest possible opportunity. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999)(determining that the "overall aim" of the PSLRA is to "curb abusive securities litigation . . . at the earliest feasible stage of the litigation"). Inherent

## I. **Procedural History**

This case was initiated by Plaintiff on November 26, 2007, when Plaintiff filed its Verified Complaint for Injunctive Relief (Doc. # 1), Motion for Temporary Restraining Order (Doc. # 2), and supporting affidavit (Doc. # 3). The Verified Complaint alleges that Defendants obtained shares of Intrepid stock improperly. Among other allegations, the Verified Complaint asserts that Defendants converted the shares, that Defendants are insiders who did not pay for the shares, that Defendants violated fiduciary duties owed to Plaintiff, and that Defendant engaged in a course of conduct in violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, et seq. The Verified Complaint introduces the action with the following allegations:

> This is an action or injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure to prevent Defendants from transferring shares they previously obtained unlawfully from Intrepid (f/k/a MangaPets, Inc.). This is a simple case of former executives and their associates using a company for their own benefit to obtain shares to which they were not entitled. Shares issued by Intrepid (then MangaPets) were done so without payment or benefit to the company. They were improperly issued and taken for the personal gain of those in control of the company and their friends.

(Doc. # 1 at ¶ 1).

This Court initially denied Plaintiff's request for a TRO

---

defects in the Verified Complaint warrant immediate dismissal. Although this Court grants Defendants' motion to dismiss, dismissal of the Verified Complaint would have been appropriate on this Court's own initiative, through an order issued sua sponte.

(Doc. # 4); however, on November 27, 2007, Plaintiff filed an amended motion for a TRO (Doc. # 6), and this Court granted Plaintiff's request for a TRO.[2] (Doc. # 7). This Court's initial order granting the TRO ordered that the TRO would expire on December 7, 2007 at 5:00 p.m. (Doc. # 7). The TRO was later extended to expire on December 14, 2007. (Doc. # 17). The TRO places the following restrictions on Defendants:

> During the pendency of the TRO, Defendants, their officers, agents, servants, employees, and attorneys, are prohibited from transferring, negotiating, or otherwise absconding with certificated securities of Intrepid. In addition, during the pendency of the TRO, Defendants, their officers, agents, servants, employees, and attorneys, are alternatively prohibited from withdrawing, spending, destroying, removing, encumbering, transferring, damaging, pledging, or otherwise disposing of the funds flowing from the sale of the shares in the event that Defendants have already transferred or sold the shares.

Plaintiff filed a motion for a preliminary injunction on December 4, 2007, accompanied by supporting affidavits (Doc. ## 11-13). This Court held a hearing on Plaintiff's motion for a preliminary injunction on December 5, 2007. During the hearing, the Court required Plaintiff to post a $25,000 bond as security

---

[2] This Court's Order granting the TRO contained preliminary findings, including the finding that Plaintiff is likely to succeed on the merits of its claims against Defendants (Doc. # 7). The findings in the Order granting the TRO were made prior to the December 5, 2007 hearing and without the benefit of any responsive documents from Defendants. The continuing course of the proceedings before the undersigned cause the undersigned to retreat from the preliminary findings made in the Order granting the TRO.

pursuant to Federal Rule of Civil Procedure 65(c), and Plaintiff has complied with this requirement (Doc. # 22). During the hearing, this Court ordered the parties to file materials supporting their respective positions on or before December 12, 2007.

On December 12, 2007, Defendant filed a motion to dismiss the Verified Complaint, or in the alternative, motion for summary judgment, along with affidavits in support. Also on December 12, 2007, Plaintiff filed a memorandum of law in support of Plaintiff's request for a preliminary injunction and related affidavits.

Although Plaintiff has not had the opportunity to file a response in opposition to the motion to dismiss, this Court finds it appropriate to dismiss the Verified Complaint without prejudice.

## II. **Legal Standard**

On a motion to dismiss, this Court must accept as true all the allegations in the complaint and construe them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, a court must favor the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")

However, the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-1965 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

**III. Securities Fraud**

Count One of the Consolidated Complaint is asserted against all Defendants under Section 10(b) of the Securities and Exchange Act and Rule 10b-5 promulgated under its authority. Section 10(b) of the Exchange Act states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
>
> Regulation 10b-5 states:
>
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) to employ any device, scheme, or artifice to defraud, (b) to make any

5

> untrue statement of material fact or to omit to state a material fact in order to make the statement made, in light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

The Eleventh Circuit provided the following framework for analyzing a motion to dismiss Section 10(b) and Rule 10b-5 claims in Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001): "In order to state a claim under § 10(b) and Rule 10b-5, a plaintiff must show the following: (1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused his injury." See also Instituto De Prevision Militar v. Merrill Lynch & Co., Inc., 05-cv-22721, 2007 U.S. Dist. LEXIS 72742, at *7 (S.D. Fla. Sept. 28, 2007)(same).

### A. Heightened Pleading Requirements

The Supreme Court has evaluated the pleading requirements for securities claims, such as the present one, and has determined that such pleadings are subject to a heightened pleading standard. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (June 21, 2007)("plaintiffs [must] state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e. the defendant's intention to deceive, manipulate, or defraud.") Id. at 2504. (Citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 (1976)).

The Court in Tellabs explained the impact of the PSLRA on

6

cases such as the present one: "Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Tellabs, Inc., 127 S. Ct. at 2509 (citing 15 U.S.C. § 78u-4(b)(1)-(2)).[3]

The heightened pleading requirements of the PSLRA complement and supplement the requirements for pleading fraud under Federal Rule of Civil Procedure 9(b). Sides v. Simmons, 07-cv-80347, 2007

---

[3] The Tellabs decision provides a thorough discussion of the legislative intent behind the PSLRA:

> Setting a uniform pleading standard for § 10(b) actions was among Congress' objectives when it enacted the PSLRA. Designed to curb perceived abuses of the § 10(b) private action–nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers–the PSLRA installed both substantive and procedural controls. Notably, Congress prescribed new procedures for the appointment of lead plaintiffs and lead counsel. This innovation aimed to increase the likelihood that institutional investors–parties more likely to balance the interests of the class with the long-term interests of the company–would serve as lead plaintiffs. Congress also limited recoverable damages and attorney's fees, provided a safe harbor for forward-looking statements, mandated imposition of sanctions for frivolous litigation, and authorized a stay of discovery pending resolution of any motion to dismiss.

127 S. Ct. 2499 at 2508. (internal citations omitted).

U.S. Dist. LEXIS 70527, at *10 (S.D. Fla. Sept. 24, 2007)("[The PSLRA] goes further than Rule 9(b)").

Federal Rule of Civil Procedure 9(b) states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions or mind of a person may be averred generally."

The court in Ziemba, 256 F.3d at 1202 stated, "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

### 1. Material Misstatement or Omission

The Eleventh Circuit requires Plaintiff to isolate each statement alleged to be false and explain why it is false. See Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006)("For claims brought under the Exchange Act, including Appellants' claims under Section 10b and Section 20a, the complaint must specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on

8

information and belief, the complaint shall state with particularity all facts on which that belief is formed.")

In this case, the Verified Complaint alleges that Defendants wrongfully obtained or asserted dominion over 1,124,367 of Intrepid's 6 million shares. (Doc. # 1 at ¶¶ 17-18). Specifically, Plaintiff asserts, "[t]hese shares, however, were obtained by fraud and deception.  The scheme was effected by Defendants, many of whom were executives, insiders, and friends who caused shares to be issued without payment, although Defendants claimed to have paid for the shares with cash and services.  These statements were false." (Doc. # 1 at ¶ 18).

Contrary to the requirements of Garfield and Ziemba, the Verified Complaint does not state with particularity "(1) what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff."  256 F.3d at 1202.

It is not enough for a securities fraud plaintiff to merely allege that a false statement was made.  In the present case, the Verified Complaint fails to isolate a single false statement. Further, the Verified Complaint does not indicate which statements were made and does not attribute statements to the Defendant[s] who

9

are alleged to have made them. As it stands, the Verified Complaint does not sufficiently allege that any of the Defendants made a material false statement or omission. This defect alone would justify dismissal of Count One of the Verified Complaint. Nonetheless, this Court will further examine Plaintiff's securities fraud claims.

### 2. Scienter

The Verified Complaint does not specifically allege scienter as to each Defendant. The United States Supreme Court established the standard for pleading scienter in a Section 10(b) fraud action in the case of Tellabs. There, the Court instructed: "A plaintiff alleging fraud in a Section 10(b) action, we hold today, must plead facts rendering an inference of scienter at least as likely as any plausible opposing inference. At trial, she must then prove her case by a preponderance of the evidence. Stated otherwise, she must demonstrate that it is more likely than not that the defendant acted with scienter." Tellabs, 127 S. Ct. at 2513.

In Tellabs, the trial court determined that a securities fraud complaint sufficiently pleaded scienter. The Supreme Court remanded the case with instructions regarding the requirements for pleading scienter:

> The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts? To determine whether

> the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences. . . . Yet the inference of scienter must be more than merely reasonable or permissible it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

Tellabs, 127 S. Ct. at 2510 (internal citations omitted).

The Supreme Court further determined that "the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically. . . . In sum, the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" Tellabs, 127 S. Ct. at 2511.

The Eleventh Circuit has followed Tellabs and added that "merely alleging scienter in general, conclusory terms does not meet the particularity requirement." Garfield, 466 F.3d at 1270. In addition, "the Eleventh Circuit adheres to the rule that a showing of severe recklessness satisfies the scienter requirement." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1282 (11th Cir. 1999). Further, as stated in Garfield, 466 F.3d at 1264, "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even

11

inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger or misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."

In this case, the Verified Complaint contains a scant discussion of facts bearing on scienter:

> Intrepid has over 6 million shares. All shares are reflected in the company's records. The Defendants have demanded that Intrepid's stock transfer agent . . . register transfer of 1,124,367 shares that were purportedly issued by Intrepid. These shares, however, were obtained by fraud and deception. The scheme was effected by Defendants, many of whom were executives, insiders, and friends who caused shares to be issued without payment, although Defendants claimed to have paid for the shares with cash and services. These statements were false. Based on a review of corporate records during the relevant time period, there is no indication that the shares were issued by Intrepid or any predecessor. Specifically, there is no record of these shares being issued or paid for in the board meeting minutes. There is no record of these shares being issued from any board resolution. The relevant financial records also do not reflect any payment or compensation for the outstanding shares at issue. Finally, there is no record of any contract or agreement where shares were to be exchanged for cash, services, or any other form of compensation. Simply put, Intrepid has not record that these shares were issued for any consideration. Not only do the corporate records suggest that Defendants improperly issued shares while falsely claiming to have paid for the shares, the relationship between the shareholders and the company raises additional concerns.

(Doc. # 1 at ¶¶ 17-21).

Plaintiffs cannot hang a fraud claim on these bare "scienter" allegations. Although Plaintiff indicates that it lacks proper documentation for the transfer of its shares in question (often to

12

Plaintiff's former officers and directors) this does not raise an inference that Defendants defrauded Plaintiff out of Plaintiff's interest in the shares that is just as strong as opposing inferences.  In fact, it is just as easy to infer that Plaintiff is a poor record keeper and failed to retain documents evidencing transactions involving certain of its shares.  The opposing inference that Defendants properly acquired the shares in question is supported by the fact that Plaintiff represented to the Court during the December 5, 2007 hearing and also in its memorandum that Plaintiff no longer seeks injunctive relief over four of the thirteen Defendants named in this case: Paul Bains, Andy Lewis, Martin Tutschek, and Tyee Capital. (Doc. # 25 at 13).  It appears that Defendants provided Plaintiff with evidence of transfer of the shares: "with respect to Mr. Lewis, Mr. Bains, and Tyrr Capital, there is apparent record of payment or services and what appears to be corresponding board approval and/or disclosure in the company's SEC filings. With respect to Mr. Tutschek, Defendants have produced documents indicating that he issued himself 100,000 shares for services rendered as a director and officer." (Doc. # 25 at 13).

The Verified Complaint lacks detailed scienter allegations and does not meet the heightened pleading requirements of the PSLRA.  Dismissal of Count One is accordingly required.  Furthermore, the Verified Complaint does not even mention reliance and causation, two necessary elements for the relief that Plaintiff seeks.

**IV.  Conclusion**

This Court has examined the Verified Complaint and simply cannot uphold it as a proper vessel for a securities fraud claim. The Verified Complaint does not meet the requirements of the PSLRA. Accordingly, this Court has determined that dismissal of the securities fraud claim (Count I) is required.  Pursuant to 28 U.S.C. 1367(c), this Court declines to exercise supplemental jurisdiction over the remaining two state law claims for conversion and breach of fiduciary duty (Counts II and III).[4]  Accordingly, the verified complaint is dismissed without prejudice.  Although this Court has dismissed this case, the Court does not find that the Verified Complaint is patently frivolous, at this juncture. Accordingly, Plaintiff is entitled to return of the $25,000.00 posted as bond on December 7, 2007.  However, Plaintiff is advised that any amended complaint should be filed with great care and only after  Plaintiff is confident that the standards outlined in this

---

[4] 28 U.S.C. § 1367(a) governs supplemental jurisdiction over state law claims, and indicates "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Section 1367(c) indicates that "[t]he District Court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction."

Order are met.[5]

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff's Verified Complaint (Doc. # 1) is dismissed without prejudice. If Plaintiff desires to file an amended complaint, Plaintiff shall do so within twenty (20) days of the date of this order. If no amended complaint is filed within the time specified, this case will be dismissed with prejudice.

(2) The TRO entered on November 27, 2007 (Doc. # 7) is dissolved.

(3) Plaintiff is entitled to return of the $25,000.00 bond posted on December 7, 2007.

(4) The Clerk is directed to terminate all pending motions and deadlines, enter judgment in favor of Defendants, and close the file.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this <u>13th</u> day of December, 2007.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:
All Parties of Record

---

[5] In the instance that Plaintiff files a proper amended complaint, this Court would consider exercising supplemental jurisdiction over related state law claims.

15